White, J.
The only ground upon which the application for a peremptory writ is resisted in this case, is that the act of March 28,1864, “ to authorize the county commissioners, trustees of townships, and city councils to levy a tax for the payment of bounties to volunteers, and to refund subscriptions made for that purpose,” is repugnant to the constitution, and therefore void.
The object of the act was as its title indicates. The troops to be raised were those required to be furnished from the several counties, cities, and townships of this state, under the requisitions of the president, of October, 1863, and February, 1864. The tax authorized to be levied for this “ bounty *fund,” was not to exceed one hundred dollars for each volunteer who had enlisted or might enlist, under the requisitions named, within the respective localities.
The first objection raised against the law, is that it authorizes local taxation for other than police purposes, and is, therefore, as it is claimed, in contravention of sec. 7, art. 10, of the constitution. *37 This section provides that “ commissioners of counties, the trustees of townships, and. similar boards, shall have power of local taxation for police purposes as may be prescribed by law.” The counsel of the relators claim that the act in question, is authorized by this section, while this is denied on behalf of the defendant.
Wo do not deem it necessary to inquire whether the act can be supported under this section of the constitution, or not.
Looking at the occasion and object of the statute, it is, in our opinion, authorized under the general grant of the legislative power of the state to the general assembly, contained in sec. 1 art. 2. It was enacted flagrante bello; and its object was to' aid the several localities to which it relates, in furnishing their alloted quotas of troops to the United States, to enable it to suppress a hostile military power, which sought, by force of arms, to overthrow the government.
While the war lasted the state was exposed to constant danger, and was under the necessity of either maintaining itself in a state of military defense, or of being .able to rely for protection against invasions of the enemy, upon the military power of the general government. And it is matter of public history that, prior to the passage of this statute, invasion of the state by the forces of the enemy had been repeatedly menaced. One incux-sion had actually been made, and it is not unworthy of notice, that, at the time of the passage of the act in question, commissioners were also appointed by the legislature, to examine and report upon the claims of the citizens of the state, arising from the destruction of property, within the state, by the enemy.
The necessity for defensive war measures on the part of the state, has been repeatedly recognized and declared by the legislature. A large public debt has been created, which is *warranted by the constitution only for the purposes of repelling invasion, suppressing insurrection, or defending the state in war. For these objects the power of the state to contract debts is not limited by constitutional provisions. But, excluding these objects, and the redemption of the indebtedness of the state outstanding at the time of the adoption of the constitution, the power of the state to contract debts, is limited to seven hundred and fifty thousand dollars. Const, art. 8, secs. 1, 2, 3.
By the act of April 18,1861, “ to provide for the defense of the state,” etc., there was authorized to be borrowed, on the faith and *38 credit of the state, seven hundred and fifty thousand dollars; and by the act of the 26th of the same month, entitled “ an act to provide more effectually for the defense of the state against invasion,” this authority was extended to two millions more—all of which was designed to meet appropriations made for purposes of military defense.
The defense of the state involves not merely,its territorial integrity, but the preservation of its rights and interests. The United States is bound, as paid, of the organic law, to guarantee to the state its form of government, and to protect it against invasion; and on application of the legislature, or of the executive (when the legislature can not be convened), against domestic violence.
The state has a deep interest in the preservation of the government of the United States in all its integrity andpower; and when endangered in war by a hostile power, the state government may, within the bounds of its own constitutional powers, aid in its preservation, and, in so doing, is but in the exorcise of the legitimate powers of self-defense.
The decision of the question, as to whether a state of facts existed which created an exigency for the defense of the state, is necessarily vested in, and left to the wisdom and discretion of, the political department of the government; and the existence of the exigency having been decided by that department, .it is not within the province of the judiciary to review that decision. If, for example, the legislature had authorized the state directly to aid in raising the troops called for by the president, and to this end had offered the bounties *in question, and provided for their payment by taxation, it would not be within the province of the court to question the validity of the law, either upon the ground that no necessity existed for the defense of the state, or that the mode of defense adopted was not legitimate.
But conceding that the general assembly might have authorized the payment of these bounties, and levied, by general taxation, the necessary amount of money to pay them, the question still remains, whether it could, consistently with the constitution, authorize the local subdivisions named in the act in question to do so. That this power would be within the general grant of legislative power, if not reserved by other parts of the constitution, does not admit of controversy. The question is, is it so reserved ?
*39 Tho defendant’s counsel claim that it is by implication arising from section 7, article 10, already quoted.
But, for the special object of repelling invasion, suppressing insurrection, and defending the state in war, the implication claimed to arise from tho section referred to, is repelled by section 5, article eight. This section is as follows: “ Tho state shall never assume the debts of any county, city, town, or township, or of any corporation whatever, unless such debts shall have been created to repel invasion, suppress insurrection, or defend tho state in war.” This clearly implies that counties, etc., may bo authorized to create debts for those objects ; and if such debts may bo created, it must have been contemplated that they were to be paid, and this could only be done by local taxation, unless tho state should see proper to assume them. This assumption the state .would ordinarily, no doubt, make; but it is not bound absolutely to do so. And, where each locality had borne no more than its share of the common burden, there would seem to be no just ground for asking such assumption.
A limitation of the general authority of the legislature to authorize the creation and payment of debts, by the localities in question, for the special objects named, can not be implied from a special provision in the constitution which recognizes the creation of debts for such purposes by the local authorities. *The implication arising from such special provision is in favor of the existence of the power—not against it.
As already remarked, the only objects for which the state can contract debts without limitation, are, to repel invasion, suppress insurrection, and defend tho state in war. Debts contracted for these purposes, are exempted from the general prohibition limiting tho amount of the indebtedness tho state may create. And it should be noticed, that it is for tho same objects, and for those only, that section 5, article 8, contemplates tho creation of debts by the political and municipal subdivisions of the state.
It may, however, be suggested that the debts thus contemplated are only such as may be created upon sudden emergencies without previous authority. If debts were created upon such emergency, without authority, for proper objects, they might, no doubt, be legalized ; and it would seem equally clear, that the emergency might bo anticipated, by appropriate legislation, and provision be made against it; and thus its consequences be mitigated,'if not wholly avoided.
*40 There are some other points made by counsel in their argument which we will briefly notice.
1. It is argued, that the payment of bounties is only a mode of purchasing personal exemption; and, counsel conclude, that no public debt can be created for such purpose, either against the state or a local municipality. That the state can not, they say, assume such a debt, nor the local authorities provide for it by taxation.
If the state could not assume debts of this description it could not create them originally. It would, according to this mode of reasoning, therefore, be unconstitutional for the state, when in need of a military force for the purposes of war, or otherwise, to provide bounties as an inducement or means for obtaining it. And the samo course of reasoning that would deny the power to the state, would seem, also, to deny it to the general government. Bounties are but a mode of compensation for services, and may be either for past, or as an inducement to future service. Their purpose is to strengthen the military power, not to weaken it; to commend the service to public favor and induce men to enter it—not to ^purchase the personal exemption of any one. It is true, if the requisite force should not be obtained from volunteers, and compulsory service should be exacted by the government, a burden would fall on the particular persons, selected to render such service, of which they would have been relieved had an adequate voluntary force been obtained. But there is certainly nothing in the constitution on which a citizen can claim to resist taxation designed to raise a voluntary force, on the ground that if a draft were resorted to, he would escape, and the burden be thrown exclusively on his neighbor.
2. Another ground of objection is thus stated, by counsel, in their argument: 11 Either the state or general government has the right to command the services of all, or such portion of its citizens, for military purposes, as may be required. To defend the state and the United States against any and all enemies, is the duty of every citizen. This obligation to serve the government being a personal one, no debt could be created against the government in becoming released from it; nor could such debt be created against municipalities. This personal obligation could only be discharged by rendering the service required for a specified time, either in person or by another, or by the payment of money, as was done under the 1300 exemption law.”.
The theory upon which this argument rests, like the former, if *41 we understand it, is this : that the members of the community subject, by the law, to military duty, in rendering such military services as the government may need, are but discharging their own personal obligations, and that a general tax designed or operating to relieve any part of them from such personal service, is, in effect, taxing the property of one portion of the community to discharge the obligations of another. If this were so, it would seem to follow that they ought not to be paid for discharging what is said to be only their own personal obligations. This reasoning, followed to its legitimate results, would seem to lead to a denial, not only of the right to levy taxes for bounties, but for pay, pensions, and the support of the families of such as might be absent in the service.
*But the position assumed involves a fundamental error in the argument of counsel. While it is true that only a certain class <5f citizens are fit for military service, yet all classes are equally liable to furnish the means that may be deemed necessary by the government to raise and maintain the requisite military force. The property of one class of citizens is no more entitled to immunity from the burdens arising from the necessities of the state than the persons of another; and to what extent either persons or property may be required to respond to such necessities, is for the legislature to determine.
3. Another ground upon which it is said the statute is invalid is, that it provides bounties not alone for raising volunteers, but for the repayment of moneys already paid, pledged, or subscribed as bounties to volunteers who had enlisted, or should enlist, for the respective localities named, under the requisitions of the president.
But if it was competent for the legislature to have conferred authority for the payment, by the local authorities, of the bounties originally, it was equally competent for it to legalize what they might have already done, and to authorize them to adopt and ratify what had been done by others toward accomplishing the end sought.
A peremptory mandamus is awarded.
Brinkerhoee, C. J., and Scott, Day, and Welch, JJ., concurred.